IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LOUIE B. NICHOLS,<br><br>Defendant. | No. CR-F-91-176 REC<br><br>ORDER DENYING MOTION FOR MODIFICATION OF IMPOSED TERM OF IMPRISONMENT |

On July 8, 2005, Louie B. Nichols, proceeding <u>in pro per</u>, filed a motion for modification of an imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2), contending that he is entitled to be resentenced pursuant to Amendments 484 and 591 to the United States Sentencing Guidelines, which amendments have been made retroactive by the Sentencing Commission.[1]

---

[1] Nichols coupled this motion with a motion for a new trial. By Order filed on November 8, 2005, the court dismissed the motion for new trial for lack of jurisdiction.
  In his reply brief filed on December 15, 2005, Nichols argues that he is entitled to modification of his sentence under Section

1

The United States was ordered to respond to petitioner's motion.  All briefing now being complete, the court denies petitioner's motion for the reasons set forth herein.

Nichols was charged with three other defendants with conspiracy to manufacture methamphetamine.  Nichols was convicted by jury trial on July 24, 1992 as were his co-defendants Earl Marcus Byers and Rachelle Denise Cox.  On November 16, 1992, Nichols was sentenced to 264 months in custody.  Nichols appealed and his conviction and sentence were affirmed by the Ninth Circuit on January 27, 1994.

On June 25, 2001, Nichols filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, claiming that his sentence violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that the prosecution failed to provide certain documents in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and that he was denied the effective assistance of counsel.  Nichols' Section 2255 motion was denied by Order filed on July 6, 2001. The Ninth Circuit affirmed the denial of the Section 2255 motion on December 5, 2002.

Nichols' motion for modification of his sentence pursuant to Section 3582(c)(2) based on Amendments 484 and 591 to the

---

3582(c)(2) because of the Supreme Court's holding in <u>United States v. Booker</u>, 543 U.S. 220 (2005).  However, <u>Booker</u> is a Supreme Court decision, not a retroactively applicable guideline amendment by the Sentencing Commission.  Therefore, <u>Booker</u> is inapplicable to § 3582(c)(2) motions.  <u>See</u> <u>United States v. Moreno</u>, 421 F.3d 1217, 1220 (11th Cir. 2005).  Nichols is not entitled to relief under Section 3582(c)(2) because of <u>Booker</u>.

2

Sentencing Guidelines is a continuation of the criminal proceedings.  See United States v. Fair, 326 F.3d 1317, 1318 (11th Cir. 2003); United States v. Ono, 72 F.3d 101 (9th Cir. 1995).  Therefore, this court is authorized by the terms of Section 3582(c)(2) to consider the merits of Nichols' motion.

**A.   Amendment 484.**

Amendment 484, effective November 1, 1993, provided:

> The Commentary to §2D1.1 captioned 'Application Notes' is amended in Note 1 by deleting '21 U.S.C. § 841.' and inserting in lieu thereof:
>
>> '21 U.S.C. § 841, except as expressly provided.  Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be use.  Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste material from an illicit laboratory used to manufacture a controlled substance.  If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.
>>
>> An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.'
>
> **REASON FOR AMENDMENT:** The amendment addresses an inter-circuit conflict regarding the

3

> meaning of the term 'mixture or substance,' as used in §2D1.1 by expressly providing that this term does not include portions of a drug mixture that have to be separated from the controlled substance before the controlled substance can be used.  This issue has arisen, subsequent to the Supreme Court decision in Chapman v. United States, 111 S.Ct. 1919 (1991), in two types of cases. The first type of case involves a controlled substance bonded to, or suspended in, another substance (e.g., cocaine mixed with beeswax); however, the controlled substance is not usable until it is separated from the other substance ... The second type of case involves the waste produced from an illicit laboratory used to manufacture a controlled substance or chemicals confiscated before the chemical processing of the controlled substance is completed.  The waste product is typically water or chemicals used to either remove impurities or form a precipitate (the precipitate, in some cases, being the controlled substance).  Typically, a small amount of controlled substance remains in the waste water; often this amount is too small to quantify and is listed as a trace amount (no weight given) in DEA reports.  In these types of cases, the waste product is not consumable.  The chemicals seized before the end of processing are also not usable in that form because further processing must take place before they can be used ....

In United States v. Sprague, 135 F.3d 1301 (9th Cir. 1998), the Ninth Circuit, when applying Amendment 484 to a motion for reduction of sentence under Section 3582(c)(2), held:

> [O]nce the movant has carried his burden of showing that the sentence imposed was based on the entire weight of a mixture containing materials that must be separated from the controlled substance to render it usable, Amendment 484 applies, and a district court must exclude the weight of any non-usable materials from the total weight of the mixture in calculating the base offense level.  The Government bears the burden of showing the weight of the controlled

4

>            substance for purposes of determining the
>            base offense level.  Finally, the sentence
>            should be calculated as if the amendment had
>            been in effect at the time of sentencing, and
>            the district court may employ alternative
>            means for determining the base offense level
>            as allowed by the Guidelines.

135 F.3d at 1307.

Here, Nichols has made no such showing.  Rather, Nichols contends "that there was not expert testimony on behalf of the Defendant, he would need a hearing to prove that the controlled substances involved in this case could have been one of several different controlled substances."  He asserts that

>            if given the chance, he could prove that the
>            controlled substances involved could be one
>            of several different types of amphetamine,
>            methamphetamine, and/or L methamphetamine.
>            In addition, the controlled substances that
>            were seized could also be tested for waste
>            water and/or other substances that would have
>            to be separated before they could be used.
>            The Defendant in this case seeks the Court
>            for an expert in this field and/or invokes 18
>            U.S.C. § 3006A.  The Defendant also seeks a
>            re-sentencing hearing at which both the
>            Defendant and the government can provide
>            expert testimony.

However, the record in this action establishes that Nichols' sentence was calculated based on 16 pounds of ephedrine exchanged between undercover agents and defendants during the three-month conspiracy.  The PSR stated in pertinent part:

>            34. ... According to Mark Kalchik, the
>            chemist with the Bureau of Narcotics
>            Enforcement who investigated this case, 3-1/2
>            kilograms of pure methamphetamine could have
>            been produced from 16 pounds of ephedrine.
>            This calculation is based on an 80% return
>            rate of the chemical, ephedrine, when
>            processed to manufacture methamphetamine.  It

5

1
2
>will therefore be recommended that the Court adopt a drug quantity of 5-1/2 kilograms of pure methamphetamine.

Amendment 484 has no application when a sentence is calculated based on the amount of methamphetamine that could be produced from ephedrine because it is not based on the quantity of drugs found in a "mixture or substance". See United States v. Campbell, 2000 WL 554465 (9th Cir. 2000).

**B.  Amendment 591.**

Amendment 591, effective November 1, 2000, but which is applied retroactively, see §1B1.10(c), makes a number of changes to USSG §1B1.1, the Application Notes to §1B1.2, particularly by striking Application Note 3, the Application Notes to §2D1.2, Appendix A (Statutory Index), and the Application Notes to §2H1.1.  The reasons for Amendment 591 are explained in the United States Sentencing Commission Guidelines Manual, Supplement to Appendix C [Amendments to Guidelines Manual November 1, 1998, through November 1, 2000], in pertinent part as follows:

> **Reasons for Amendment:** This amendment addresses a circuit conflict regarding whether the enhanced penalties in §2D1.2 (Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals) apply only in a case in which the defendant is convicted of an offense referenced to that guideline or, alternatively, in any case in which the defendant's relevant conduct included drug sales in a protected location ....
>
> In promulgating this amendment, the Commission also was aware of case law that raises a similar issue regarding selection of a Chapter Two (Offense Conduct) guideline, different from that referenced in the

6

>           Statutory Index (Appendix A), based on
>           factors other than the conduct charged in the
>           offense of conviction ....
>
>           The amendment modifies §§1B1.1(a), 1B1.2(a),
>           and the Statutory Index's introductory
>           commentary to clarify the inter-relationship
>           among these provisions.  The clarification is
>           intended to emphasize that the sentencing
>           court must apply the offense guidelines
>           referenced in the Statutory Index for the
>           statute of conviction unless the case falls
>           within the limited 'stipulation' exception
>           set forth in §1B1.2(a).  Therefore, in order
>           for the enhanced penalties in §2D1.2 to
>           apply, the defendant must be convicted of an
>           offense referenced to §2D1.2, rather than
>           simply have engaged in conduct described by
>           that guideline.  Furthermore, the amendment
>           deletes Application Note 3 of §1B1.2
>           (Applicable Guidelines), which provided that
>           in many instances it would be appropriate for
>           the court to consider the actual conduct of
>           the offender, even if such conduct did not
>           constitute an element of the offense.  This
>           application note describes a consideration
>           that is more appropriate when applying §1B1.3
>           (Relevant Conduct), and its current placement
>           in §1B1.2 apparently has caused confusion in
>           applying that guideline's principles to
>           determine the offense conduct guideline in
>           Chapter Two most appropriate for the offense
>           of conviction.  In particular, the note has
>           been used by some courts to permit a court to
>           decline to use the offense guideline
>           referenced in the Statutory Index in cases
>           that were allegedly 'atypical' or 'outside
>           the heartland. ....

Nichols contends that he is entitled to be resentenced pursuant to Amendment 591 because the determination of the base offense level under U.S.S.G. §2D1.1 was made on the basis of the trial judge's finding of drug quantity rather than on the basis of a specific finding of drug quantity charged in the indictment and found by the jury.

7

Nichols' contention is without merit.  Amendment 591 applies to the determination of the appropriate Chapter Two offense guideline section.  Nichols was sentenced under §2D1.1.  Prior to Amendment 591, a court could consider relevant conduct when selecting the applicable offense guideline section.  Amendment 591 requires that the initial selection of the offense guideline be based only on the statute of conviction rather than on judicial findings of actual conduct that will never be made by the jury.  Nichols' claim confuses two distinct steps taken to arrive at a guidelines sentence: (1) selection of the applicable offense guideline, and (2) selection of the base offense level within that applicable offense guideline.  The purpose of Amendment 591 is to "emphasize that the sentencing court must apply the offense guideline listed in the Statutory Index for the statute of conviction."  Amendment 591 is therefore only pertinent in considering the trial court's determination of the applicable sentencing guideline, not the base offense level that the trial court selected once the proper guideline has been chosen.

ACCORDINGLY:

1.  The motion for modification of imposed term of imprisonment is denied.

IT IS SO ORDERED.

**Dated:  December 20, 2005**              **/s/ Robert E. Coyle**
668554                                      UNITED STATES DISTRICT JUDGE